[Civil No. 4061. Filed June 12, 1939.]

[91 Pac. (2d) 269.]

J. J. KNIGHT and JOSEPHINE E. KNIGHT, Appellants, v. COUNTY OF MARICOPA, a Body Politic and Corporate, Appellee.

Mr. John W. Ray and Mr. E. E. Selden, for Appellants.

Mr. Richard F. Harless, County Attorney, and Mr. Leslie C. Hardy, his Assistant, for Appellee.

McALISTER, J.—This is an appeal from a judgment in favor of Maricopa county against the sureties on a bail bond.

On December 27, 1937, M. T. Phelps, Judge of the Superior Court of Maricopa County, Arizona, sitting as a committing magistrate, held J. B. Rhodes to answer on a charge of bribery, a felony, and admitted him to bail in the sum of $2,500. The order directed that he be committed to the custody of the sheriff until he furnished bail or was otherwise discharged. Later that day the defendants, J. J. Knight and Josephine E. Knight, appeared before Judge PHELPS and executed and delivered to him a bail bond in the following language:

"In the Superior Court of Maricopa County State of Arizona

"State of Arizona vs. J. B. Rhodes, Defendant.

"Bail Bond No. ——

"An order having been made on the 27th day of December, 1937, by M. T. Phelps, Judge of the Superior Court of Maricopa County, Arizona, sitting as a Magistrate, that J. B. Rhodes be held to answer upon a charge of bribery, a felony, upon which he has been admitted to bail in the sum of Twenty-five Hundred

and 00/100 Dollars ($2500.00), we, J. B. Rhodes, as principal, and J. J. Knight, as owner of separate property and Josephine E. Knight, as owner of sole and separate property, as sureties, hereby undertake and the said J. B. Rhodes will appear and answer the charge above mentioned in whatever court it may be presented, and will at all times hold himself amenable to the orders and process of the court, and if convicted, will appear for judgment, and render himself in execution thereof, or, if he fails to perform either of these conditions, that he will pay to the State of Arizona the sum of Twenty-five Hundred and 00/100 Dollars ($2500.00).

"Witness: our hands and seals this 27th day of December, 1937.

"J. B. RHODES, Principal.
"J. J. KNIGHT, Surety
"JOSEPHINE E. KNIGHT, Surety."

This undertaking, upon which appears the affidavits of the sureties showing them to be qualified bondsmen, was promptly approved by Judge PHELPS, and the principal therein, J. B. Rhodes, released from custody. The bond, along with a transcript of the proceedings at the preliminary hearing, was thereupon delivered to the clerk of the superior court.

On December 28, 1937, an information, charging Rhodes with the crime of bribery for which he had been held to answer the previous day by Judge PHELPS, was filed by the county attorney of Maricopa county, John W. Corbin. Some time later, the exact date not appearing, Rhodes was arraigned and pleaded not guilty to the information in the division of the superior court of Maricopa county over which Judge J. C. NILES presided and to which the case had been assigned, and the trial was thereupon set for April 5, 1938. Rhodes was present in person at the time and had actual notice of this setting. When April 5, 1938, arrived the case was duly called for trial in Judge NILES' division of the court, but Rhodes was

not present. He was at the time outside the state of Arizona at some place unknown to the plaintiff and its county attorney. His failure to appear for trial was entered of record in the minutes of the court and his bail bond, by order of the superior court, was then declared forfeited and the county attorney directed to collect it.

Pursuant to this order Maricopa county, through its county attorney, filed on April 27, 1938, a complaint against the principal and sureties on this bond in which it alleged, among others, the foregoing facts. The complaint was not served on Rhodes, however, because his residence was unknown, but defendants, J. J. Knight and Josephine E. Knight, were both served and appeared by filing a general demurrer and an answer in which, after admitting certain allegations of the complaint, they set up several special and affirmative defenses among which were these:

"1. That the defendant J. B. Rhodes was never lawfully committed for the reason that Judge M. T. Phelps, Judge of the Superior Court of Maricopa County, sat as the committing magistrate, whereas, by the laws of the State of Arizona, he was without jurisdiction so to act.

"2. That an information was issued and filed against the defendant Rhodes after the bond on which the complaint is based (had expired) and no bond is given on this information as provided by Section 5165, Revised Code of Arizona, 1928. The bond pleaded does not continue after indictment or information.

" . . .

"That under the terms of the bail bond, as fully set forth in plaintiff's complaint, and as admitted in this answer, the said defendant J. B. Rhodes has never done any act or failed to do any act which constitutes a breach of the obligation of said bonds so far as the defendants Knight are concerned."

At the trial the plaintiff offered no evidence because the material allegations of the complaint were ad-

mitted by the answer but the defendants Knight introduced some in support of their special and affirmative defenses. The court found among others these facts:

That Rhodes was a fugitive from justice.

That defendants admit all material allegations of fact contained in plaintiff's complaint.

That the evidence adduced by the defendants was insufficient to support a defense to this action.

The allegations of fact contained in plaintiff's complaint are all true.

Following these findings the court ordered judgment for the plaintiff against the defendants, J. J. Knight and Josephine E. Knight, in the sum of $2,500, together with interest thereon at the rate of six per cent. per annum from April 5, 1938, until paid. It is from this judgment the defendants have appealed.

There are four assignments but they are argued under two propositions of law. The first challenges the legality of the bail bond upon the ground that a judge of the superior court has no jurisdiction or authority to preside at a preliminary examination, to hold the defendant to answer, and to fix and approve a bond for his appearance in the superior court. Especially is this true, they argue, when the magistrate is a presiding judge of the court to which the accused is held to answer. This exact question was decided by us only recently in the case of *Hoy* v. *State, ante,* p. 440, 90 Pac. (2d) 623. It was there held that superior court judges may, under the Constitution and statutes of this state, hold preliminary hearings and when doing so that they exercise only the powers of any other magistrate. The argument of counsel in this case does not contain anything which renders the correctness of that holding doubtful.

A further objection urged to the legality of the bail bond is that it was given by Rhodes following the

preliminary hearing pursuant to section 5161, Revised Code of 1928, which provides the form of bond a defendant held to answer shall give for his appearance before the superior court, but that no new undertaking binding him to appear and answer the information was given in the language of section 5165, Revised Code of 1928, after it was filed. It is contended that the bond did not continue after the information but expired when he appeared to answer it. Perhaps it would have been more nearly correct, technically speaking, if the court had ordered him to furnish a new bond following his arraignment upon the information, but the one upon which he was at liberty provided that he

"will at all times hold himself amenable to the orders and process of the court, and if convicted, will appear for judgment, and render himself in execution thereof,"

and due to these conditions the court undoubtedly followed the course so common in the trial courts of permitting a defendant his freedom after arraignment upon an information or indictment upon the bond already in force, instead of requiring a new one that could not any more effectually make it his duty to appear when needed. It was evidently acceptable to the sureties, appellants here, or there would have been something in the record showing that they objected to continuing as his bondsmen, but nothing of this kind appears.

 The second proposition upon which appellants rely is that even though Judge PHELPS had authority under the law to fix the amount of the bond and approve it, and even though it was still a valid obligation, no breach thereof is alleged or shown. In discussing this question, appellants have failed to keep in mind the fact that the only part of the record before this court is the complaint, demurrer and answer, and the judgment which includes certain findings. Neither

the minute entries nor the transcript of the evidence has been brought here in the abstract or otherwise, so a large part of appellants' brief is based upon matters concerning which we are not advised. However, the chief ground upon which they rely to show no breach is that certain necessary allegations of the complaint find no justification in the terms of the bond. The complaint alleges "that said undertaking of bail was expressly conditioned that said J. B. Rhodes would appear for trial in said cause," and appellants contend that this statement is not justified or supported by the provision in the bond that

"the said J. B. Rhodes will appear and answer the charge above mentioned in whatever court it may be presented, and will at all times hold himself amenable to the orders and process of the court, and if convicted, will appear for judgment."

In other words, neither this nor any other provision in the bond specifically requires Rhodes to appear for trial, and, this being true the allegation to that effect finds no support in the record. This is technical in the extreme. The condition that he "will at all times hold himself amenable to the orders and process of the court" clearly includes an order setting the trial of the case made in his presence, for it is in effect an order directing him to be present at that time for trial. To bring it within the class of orders referred to in the expression, "amenable to the orders . . . of the court," it was not necessary that it direct him in express and specific terms to be present at that time for trial. Any language having that effect was sufficient and none could have advised him with greater certainty that it was his duty to be present on April 5, 1938, for trial than that setting the case for trial for that day. The command "be here at that time," would have added nothing to it or made his duty any clearer, since he knew the trial was set for that day and that no action

could be taken in connection therewith unless he was present. He was charged with a felony and under section 5028, Revised Code of 1928, a prosecution for that grade of offense cannot be had unless the defendant is personally present at the trial.

The allegation that Rhodes, though fully advised as to the time and place of trial, failed to appear therefor when his case was called on April 5, 1938, and that he on that day became a fugitive from justice whose whereabouts were unknown to the plaintiff and the county attorney were admitted by the answer and found by the court to be true. Nothing further was necessary to justify the trial court in holding the defendants in default on their undertaking, in forfeiting their bond on April 5, 1938, and in rendering judgment later for the full amount thereof.

Hence, its action in so doing is hereby affirmed.

ROSS, C. J., and LOCKWOOD, J., concur.