**UNITED STATES of America**

v.

**Theodore J. ISAACS and Otto J. Kerner, Jr.**

**No. 71 Cr. 1086.**

United States District Court, N. D. Illinois, E. D.

Oct. 13, 1972.

Supplemental Opinion Oct. 30, 1972.

*On Motion for Dismissal* Nov. 8, 1972.

On Motion for Production of Memoranda Nov. 28, 1972.

See also D.C., 347 F.Supp. 763.

James R. Thompson, U. S. Atty., Samuel K. Skinner, First Asst. U. S. Atty., Chicago, Ill., Darrell McGowen, Dept. of Justice, Washington, D. C., Steven Kadison, Gary L. Starkman, Steven H. Mora, Asst. U. S. Attys., Chicago, Ill., for plaintiff.

Paul Connolly, Williams, Connolly & Califano, Washington, D. C., for defendant Kerner.

Warren D. Wolfson, Chicago, Ill., for defendant Isaacs.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge (Sitting by Designation).

Defendant Kerner has subpoenaed "[a]ll contents of a locked file cabinet" of defendant Miller which the latter turned over to the Government pursuant to an immunity agreement between himself and the Government. The Government promptly filed a motion to quash the subpoena on the grounds that (1) the subpoena is overly broad and fails

to establish evidentiary relevance and (2) some of the documents contained therein are immune from subpoena pursuant to 18 U.S.C. § 3500(a). See Rule 17(c), F.R.Cr.P.

At the pre-trial conference on September 11, 1972, the Government stated its willingness to make all the contents of the file cabinet available to defense counsel for inspection, subject only to a protective order prohibiting disclosure of said contents and defense counsel's future representation of persons indicted on the basis of this material. The only exception to this offer was purported Jencks Act statements. Consequently, the scope of the motion is limited to these documents.

The Government has submitted to the Court for *in camera* inspection the two documents it contends are Jencks Act statements. The first is a sixty-eight page typed, unsigned, manuscript with numerous exhibits attached. It appears to be, as the Government contends, a statement of defendant Miller, who is a lawyer, designed to advise his own counsel of the circumstances surrounding his own involvement in the events mentioned in the instant indictment that tend to exculpate himself. The Government states that this document was prepared during January and February, 1972, by Mr. Miller, and that Mr. Miller has read it in its entirety and stated his opinion that it adequately sets forth his views regarding his own defense at the time he prepared it.

The second document is a four-page unsigned manuscript prepared by one of Mr. Miller's employees, an accountant, Robert Boissenin, at Miller's request and in preparation of the defense of his case. The Government states that this document was prepared during March and April, 1972, and that Mr. Boissenin, who both wrote it and typed it, has stated that it reflects the described occurrences to the best of his recollection.

The issue presented by this motion is whether these statements in the possession of the Government are protected from subpoena and discovery by 18 U.S. C. § 3500(a). Or, in the alternative, whether their discovery can be compelled under Rule 16(b), F.R.Cr.P., in light of the fact that they were not made to Government agents. This issue arises because of the 1970 amendment of 18 U.S. C. § 3500 which deleted the phrase "to an agent of the Government" from subsection (a) thereof. Its resolution requires an examination of the Jencks Act and its history, as well as the amendment and Rule 16(b).

Congress enacted 18 U.S.C. § 3500, known as the Jencks Act, in 1957 as a result of the decision in the case of Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). The Court in *Jencks* held that a defendant is entitled to see memoranda of statements made by Government agents for impeachment purposes. The Government is required to turn these statements over to the defense at the time of cross-examination if the contents are relevant to the subject matter of the direct testimony. See also Palermo v. United States, 360 U.S. 343, 345, 79 S.Ct. 1217, 3 L. Ed.2d 1287 (1959).

The Jencks Act is divided into five sections (subsections of 18 U.S.C. § 3500). Section (a) restricts the use of statements or reports of prospective Government witnesses to impeachment purposes. Sections (b) through (d) are concerned with the procedure for compelling disclosure of these statements by the Government for cross-examination of its witnesses. Section (e) defines the term "statement" as it is used in sections (b) through (d), that is, the types of statements which can be compelled to be disclosed. In the original act, section (e) included only (1) a written statement of a witness that he had signed or approved (the statements in controversy fall into this category), and (2) a substantially verbatim recital of an oral statement of the witness to an agent of the Government that was recorded contemporaneously with the making of said oral statement. The 1970 amendment

added a third category of statements made by the witness to a grand jury.

The fact that section (e), "restrictively defines with particularity the term 'statement' as used in the three preceding sections" and clearly is not applicable to section (a) demonstrates the Congressional intention to prevent production of "all other statements . . . [that is, those not expressly included in section (e)] . . . under pre-existing' rules of procedure". Palermo v. United States, supra, at 349, 79 S.Ct. at 1223.

> " . . . Indeed the reports and debate proceeded on the explicit assumption that the bill retained as a major purpose the barring of all statements not specifically defined. The purpose of the Act, its fair reading and its overwhelming legislative history compel us to hold that statements of a government witness made to an agent of the Government which cannot be produced under the terms of 18 U. S.C. § 3500, [18 U.S.C.A. § 3500,] cannot be produced at all." Palmero v. United States, supra, p. 351, 79 S. Ct. at 1224 (footnote omitted)

■ The 1970 amendment was enacted as part of Title I of the Organized Crime Control Act of 1970 which primarily is concerned with special grand jury investigations of organized criminal activity. Section 102, P.L. 91–452. The negligible legislative history on this amendment refers only to the intention to include grand jury minutes as a statement of which disclosure can be compelled under sections (b) through (d). See H.Rep.No.91–1549, 91st Cong., 2d Sess. 41 (1970); U.S.Code Cong. & Admin. News, p. 4007; S.Rep.No.91–617, 91st Cong., 1st Sess. 144 (1969). The obvious intent behind the section (a) amendment is the additional protection from compelled discovery of all statements or reports in the possession of the Government regardless of whether they were made to a Government agent or not. Neither the amendment itself nor its legislative history contains any indi-

cation of an intent to limit the expansion of section (a) materials, for example, to grand jury minutes alone. If Congress had intended to limit the expansion of materials protected from discovery, it could have said so. This view is supported by the earlier holding of *Palermo*, discussed above, that "statements of a government witness . . . which cannot be produced under the terms of 18 U.S.C. § 3500, [18 U.S.C. A. § 3500,] cannot be produced at all", and the absence of any ambiguity in the statute.

> " . . . Here . . . the detailed particularity with which Congress has spoken has narrowed the scope for needful judicial interpretation to an unusual degree. The statute clearly defines procedures and plainly indicates the circumstances for their application." Palermo v. United States, supra, at 349, 79 S.Ct. at 1222.

There is an apparent conflict between the Jencks Act limitation of discovery of a prospective Government witness' statement and Rule 16(b), F.R.Cr.P. This rule provides for discovery of papers and documents in the possession of the Government on a showing of materiality and reasonableness. The rule limits the scope of discovery, as follows:

> " . . . [T]his rule does not authorize the discovery or inspection . . . of statements made by . . . prospective government witnesses . . . *to agents of the government* except as provided in 18 U.S. C. § 3500." (Emphasis supplied)

Thus, the rule might be interpreted as permitting discovery of statements of prospective Government witnesses if they were made to someone other than a Government agent. When this rule was promulgated in 1966, the Jencks Act limited its protection from pretrial discovery to statements made to Government agents. In other words, the rule and the statute originally were consistent.

A close examination reveals that the rule incorporated the Jencks Act limita-

tions on pre-trial discovery. Accordingly, Rule 16(b) was modified by the 1970 amendment to the Jencks Act.

■■ Assuming, *arguendo*, that the language of the statute and the rule are in conflict, the Jencks Act prevails over Rule 16(b). The enabling legislation under which Rule 16(b) was promulgated, 18 U.S.C. § 3771, impliedly reserves to Congress the power to approve, reject or alter proposed rules by virtue of its reporting requirement. The provision that "laws in conflict with such rules shall be of no further force or effect" does no more than provide that the rules of pleading, practice and procedure prescribed by the Supreme Court supercede those rules of pleading, practice and procedure in effect at the time the legislation became effective. Congress' power to regulate practice and procedure in federal courts appears to be undisputed. See Sibbach v. Wilson & Co., 312 U.S. 1, 9, 61 S.Ct. 422, 85 L.Ed. 479 (1941).

■ For the indicated reasons, we are constrained to hold that defendant Kerner is not entitled to these statements in the possession of the Government at this time. The movement sponsored by many able judges and law professors for the further liberalization of the discovery rules has not been overlooked. This trend, however, is not sufficient to justify the Court in ignoring an act of Congress.

■ Another motion for consideration is that of Kerner to conduct an evidentiary hearing prior to the trial to determine the source of unauthorized leaks of information to the press so that appropriate sanctions and relief may be ordered. He relies on Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), as authority for the proposition that this Court has a duty to conduct such a hearing. He bases his motion on articles appearing in the Chicago newspapers which, he contends, dis-

close information not available from the public files of the case.

In response, the Government denies that it violated this Court's order that:

"The attorneys will not hold press conferences or give information relating to the case to the press or other news media." First Pre-trial Stipulation and Order

It argues that the factual basis for the motion is speculative; that the information published, which is not part of the public record, could have been disclosed to the press by the defendants, their counsel or persons unknown.

Judge Kerner argues that the question can be resolved by a hearing to which the reporter in question would be subpoenaed and compelled to reveal his sources. The Government predicts that the reporter would refuse to testify on the basis of a First Amendment privilege, and that this refusal would delay the trial until the Supreme Court had ruled on the issue. It contends that approval of this motion would set a dangerous precedent encouraging collateral litigation that can only delay trials, complicate issues and side-track the real questions presented by an indictment.

As we read the *Sheppard* case, it is not controlling of our case. The issue in that case appears to have been whether it was constitutional error for a state trial judge to refuse to question non-sequestered jurors, during the course of the trial, regarding their extra-judicial knowledge of the case where they could have, and in one case clearly were, exposed to news accounts of prejudicial information that was not introduced at trial. We view *Sheppard* as an application of the rule of Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959).[1] We do not consider *Sheppard* to be precedent for pretrial publicity problems. However, by way of dicta, *Sheppard* does refer to pretrial

1. *Marshall* held that a new trial should be granted where the jurors read news accounts of information that the trial court had ruled was too prejudicial to be admitted as evidence in the trial.

publicity by suggesting a continuance or a change of venue if there is a reasonable chance that "prejudicial news prior to trial will prevent a fair trial." 384 U.S., at 363, 86 S.Ct., at 1522.

A defendant's legitimate concern with pretrial publicity is his interest in a fair trial by an impartial jury. This interest is protected by *voir dire* examination of prospective jurors to eliminate any who are incompetent to try the issue. A juror is incompetent if he has formed an opinion as to the issue to be tried that is founded on some evidence and that is more than a mere impression. Chief Justice Marshall has described the test as follows:

". . . light impressions, which may fairly be presumed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of the testimony, constitute no sufficient objection to a juror; but . . . those strong and deep impressions which close the mind against the testimony that may be offered in opposition to them, which will combat that testimony and resist its force, do constitute a sufficient objection to him." 1 Burr's Trial 416

It is the function of the trial court to determine "whether the nature and strength of the opinion formed are such as in law necessarily . . . . raise the presumption of partiality. The question thus presented is one of mixed law and fact . . ." Reynolds v. United States, 98 U.S. 145, 156, 25 L.Ed. 244; Irvin v. Dowd, 366 U.S. 717, 723, 81 S. Ct. 1639, 6 L.Ed.2d 751 (1961). See also Holt v. United States, 218 U.S. 245, 248, 31 S.Ct. 2, 54 L.Ed. 1021 (1910).

In the opinion of the Court the *voir dire* of prospective jurors will safeguard the defendants' right to an impartial jury and obviates the need for the requested hearing. Accordingly, it is ordered that the motion for an evidentiary hearing be, and the same hereby is, denied.

With the agreement of all parties, it is ordered that the motions to sever defendants Miller, McInturf and Knight be, and the same hereby are, granted.

### SUPPLEMENTAL OPINION

Defendant Kerner has requested the Court to rule on a number of questions before the trial. They will be considered in the order of presentation.

1. We interpret the Government's statement concerning whether defendants were ever subjected to electronic surveillance as a denial after diligent inquiry that such surveillance ever occurred. The mere fact that a literal, legalistic interpretation of the language employed by the Government permits contrary inferences is not enough to rebut the presumption its agents obeyed the law.

2. The question of whether a member of the White House staff inspected the tax returns of defendant Kerner is immaterial to this case. We do not agree with counsel's contention that an affirmative answer warrants exclusion of any evidence germinating from this purportedly illegal act.

3. Defendant Kerner seeks disclosure of the names of Government witnesses, the subject matter of their expected testimony and the order of their appearance. This is in the nature of a request for evidentiary detail which the Government is not required to supply in advance of trial. United States v. Boneparth, 52 F.R.D. 544, 545 (S.D.N.Y., 1971).

4. An order granting Kerner's request for the Jencks Act material fifteen days before the trial date violates the clear language of 18 U.S.C. § 3500(a).

5. The Government has agreed to make available to the defendants its accounting and valuation study prepared by its expert as soon as the study is completed. Accordingly, no ruling is necessary on defendant's request for this material.

6. Defendant Kerner requests that any specific legislative or ex-

ecutive action which the Government contends resulted from the alleged bribe be identified. This request is, in effect, an attack on the adequacy of the Government's compliance with our order granting a request for particulars. The Government argues that since its response was filed three months ago (July 26, 1972), the attack is untimely. We agree. However, the request is meritorious and we think the Government should supply this information.

■■■. 7. The Court called on the parties to state their respective theories to aid its preparation of a charge. The Government submitted a detailed statement of which defendant Kerner requests further specificity. The request for theories was not intended as a device to be used for further discovery. Accordingly, the request of defendant Kerner is denied.

8. All motions to quash subpoenas duces tecum were founded on issues that have been resolved by the parties.

■■■ 9. A prospective witness in this case is not under any obligation to talk to any person concerning the case, but he should not refuse to talk to a party or his representative solely because he expects to testify for an opposing party.

10. The Government has stated in open court that the only agreement between it and any prospective witness, known to its counsel, has been made a matter of record as part of the motion to sever defendants Miller and McInturf. The Government has agreed to reduce this statement to writing in the form of a letter to defense counsel.

11. Defendant Kerner suggests that the Government have available at the trial for possible use as impeachment, the federal income tax returns of fourteen individuals and corporations. These returns may be relevant to the question of valuation of certain stocks that is in issue. The Government has agreed as to those that are available to

it with the understanding of all parties that should any return become material, the Court will determine *in camera* what portions of the returns are relevant and excise the remainder.

12. The Government's motion for sequestration of the jury has been disposed of in a separate memorandum.

13. The Government has informed the Court that it finds defendant Kerner's proposed jury selection procedure acceptable with the additional understanding that veniremen who say they have read or heard something about the case will be examined on the extent of their knowledge.

14. The motion of defendant Kerner for an order of proof will be considered after the additional briefs have been submitted.

■■■ 15. The statement of defendant Miller, previously held to be Jencks Act material, is not producible under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Government's compliance with the production requirement in the Jencks Act will also satisfy its obligation under *Brady*. This opinion is based on the Court's careful reading of the Miller statement.

## ON MOTION FOR DISMISSAL

■■■ The Government agreed with defendants Miller and McInturf to move for their severance initially and ultimately to move for dismissal of the indictment against them and to grant full transactional immunity to them in return for their complete and truthful cooperation in the prosecution of others. Defendant Kerner contends that this agreement constitutes an unfair and coercive inducement to procure testimony favorable to the Government which violates due process. He relies on the dissenting opinion in Hoffa v. United States, 385 U.S. 293, 313, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), to support this proposition. On this basis he has moved

for an order dismissing the indictment against these defendants prior to the time they take the stand.

The Government contends that the separation of powers doctrine denies to the Judiciary the power to dismiss a legally sufficient indictment because such matters are reserved to the discretion of the Executive. See Goldberg v. Hoffman, 225 F.2d 463 (C.A. 7, 1955); see also *Hoffa*, supra, at 310–312. The Court is of the opinion that the present circumstances do not justify a dismissal. Accordingly, it is ordered that this motion be, and the same hereby is, denied.

Defendant Kerner has moved for an order prohibiting the introduction of hearsay evidence of his alleged co-conspirators prior to the establishment by substantial independent evidence that a conspiracy existed and that he knowingly participated therein. He contends that cautionary instructions are not a sufficient safeguard to prevent prejudice in conspiracy cases. To support this proposition he relies on Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

We are not persuaded that these decisions are relevant to any particular evidence that might be adduced in this trial. Accordingly, it is ordered that this motion be, and the same hereby is, denied.

## ON MOTION FOR PRODUCTION OF MEMORANDA

Isaacs has moved for an order requiring the Government to supply him with copies of any memoranda, summaries, or reports concerning a conference at the Department of Justice with attorneys for defendant Miller, who has been granted a separate trial. The basis for this motion is his contention that admissions made on behalf of Miller, an alleged co-conspirator of Isaacs, are producible under Brady v. Maryland, 373 U. S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This contention assumes that the alleged admissions made on behalf of Miller are exculpatory as to Isaacs. The Government has previously acknowledged its *Brady* obligation. We have previously considered the application of *Brady* on a motion by defendant Miller. The same reasoning applies to the instant motion. In addition, the Government has supplied Isaacs with the requested material.

Defendant Isaacs also has moved for suppression of certain alleged statements of Attorney Albert Jenner while representing Isaacs in a conference with the Department of Justice. The Government has indicated its intention to introduce some of these statements as part of its proof-in-chief. As grounds for this motion, Isaacs asserts: (1) that neither Jenner nor Isaacs was informed that anything said in the conference could be used against Isaacs in a criminal prosecution; (2) that Jenner exceeded his authority by making misstatements of fact based on information provided to him by persons other than Isaacs; (3) that the power of attorney Isaacs granted Jenner did not include the power to make incriminatory misstatements of fact; and, (4) that the use of the alleged Jenner admissions by the Government in its proof-in-chief would violate Isaacs' constitutional rights.

Concerning the first ground, we note its similarity to the issue raised by Isaacs in a previous motion to suppress. After an evidentiary hearing on that motion, we found in effect that Isaacs, who is a practicing attorney, was aware of the admissions exception to the hearsay rule and of his right not to incriminate himself. Jenner, who represented Isaacs at the aforesaid hearing, is a noted expert on the law of evidence and has served on the committee that proposed the new federal rules of evidence. We are convinced that he also was aware of the admissions exception and of the Fifth Amendment rights of his client. In contrast, the case of Mi-

randa v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), concerned uneducated persons. Thus, we view the first ground as irrelevant to this case.

■ Concerning the second ground, the Court has read the Memorandum of Conference prepared by a Government attorney in attendance. This document discloses that on several occasions Jenner made statements of fact based on notes in his files that were prepared by someone else. It also discloses that he made statements that he might have been authorized to make. Should the admissibility of the alleged statements of Jenner arise as an issue in the trial, consideration will be given it at that time.

Concerning the third ground, the Court has read the written power of attorney executed by Isaacs and agrees that the power to make "incriminatory misstatements of fact" was not granted to Jenner. However, this ground will not mature until the Government identifies, as it has promised to do, those statements it will seek to introduce and their purported incriminatory effect is shown.

The fourth ground is also of such a speculative nature that the Court will be unable to rule on it except as specific questions are presented by the Government's proof-in-chief.

For the indicated reasons, this motion must be denied.

■ Isaacs has moved for severance from defendant Kerner on the basis of the Government's statement that it intends to introduce certain statements made by Kerner and his attorney at a Justice Department conference. This motion appears to be founded on the rule of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Since the Government has not identified the statements it will seek to introduce, this motion is premature.

For the reasons heretofore given, it is ordered that each motion be, and the same hereby is, denied.