817 P.2d 27

**Max DUNLAP, Petitioner,**

**v.**

**SUPERIOR COURT of the State of Arizona, in and for the COUNTY OF MARICOPA, the Honorable Norman D. Hall, and the Honorable Steven D. Sheldon, judges thereof, Respondent Judges.**

**STATE of Arizona, Real Party in Interest.**

**No. 1 CA–SA 91–109.**

Court of Appeals of Arizona, Division 1, Department D.

Aug. 8, 1991.

As Corrected Aug. 8, 1991.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Warren J. Granville and Fred Newton, Asst. Attys. Gen., Phoenix, for real party in interest.

Lewis and Roca by John P. Frank, Jordan Green, Christopher J. Brelje and Robert H. McKirgan, Phoenix, for petitioner.

## OPINION

TAYLOR, Presiding Judge.

Petitioner Max Dunlap originally brought this special action in the superior court, challenging a magistrate's decision to consider revocation of petitioner's release on his own recognizance and the magistrate's refusal to exclude wiretap evidence from the scheduled preliminary hearing. Because the superior court determined that it had no jurisdiction to review the matter, petitioner brought his special action to this court.

Following oral argument, this court accepted jurisdiction and entered an order in which relief was denied in part and granted in part, with a written opinion to follow. Thereafter, the parties settled the disputed matters presented in the petition. Because we believe that the legal issues presented are capable of repetition, *see KPNX Broadcasting Co. v. Superior Court,* 139 Ariz. 246, 250, 678 P.2d 431 (1984), and of significant importance in the administration of criminal justice in this state, we exercise our discretion to retain jurisdiction of petitioner's special action.

## FACTS AND PROCEDURAL HISTORY

On December 19, 1990, the state served a criminal summons on petitioner with a complaint alleging that he participated in the much-publicized murder of investigative reporter Don Bolles, and that thereafter he conspired to obstruct justice. The State did not arrest petitioner or place him in

custody. On January 3, 1991, petitioner appeared at his initial appearance before Superior Court Judge Ronald S. Reinstein, sitting as a magistrate. Without objection by the State, petitioner was released on his own recognizance. A preliminary hearing was scheduled for July 1, 1991 before Superior Court Judge Norman D. Hall, Jr., also to sit as a magistrate.

On January 26, 1991, the State moved to revoke petitioner's release and to consolidate the bail hearing with the preliminary hearing. Petitioner objected to both motions. He also filed a motion to preclude the use of wiretap evidence at his preliminary hearing.[1] Judge Hall, by granting the motion to consolidate the hearings, agreed to consider revocation of release. The motion to preclude wiretap evidence was denied.

Petitioner filed special action proceedings in the superior court challenging the rulings of Judge Hall sitting as a magistrate. The special action was assigned to Judge Steven D. Sheldon, who raised the issue of the superior court's jurisdiction *sua sponte*. Although both petitioner and the state agreed that the superior court had jurisdiction to accept review of the matter, Judge Sheldon held that, based on Rule 16.1(d) of the Arizona Rules of Criminal Procedure,[2] he, as a superior court judge, lacked jurisdiction to review the decisions of another superior court judge sitting as a magistrate. The special action was dismissed in the superior court and these proceedings followed.

## DISCUSSION

We first determine whether the superior court has jurisdiction to accept a special action challenge to the decisions of a superior court judge acting as a committing magistrate. We then address the merits of the issues presented in the superior court petition: 1) whether the magistrate may properly consider the revocation of petitioner's release, and 2) whether the magistrate may properly consider wiretap evidence at a preliminary hearing.

### Jurisdiction to Review the Magistrate's Decision

The office of a magistrate is created by state constitutional and statutory law. Our state constitution provides that "no person shall be prosecuted for a felony by information without having had a preliminary examination before a magistrate or having waived such preliminary examination." Ariz.Const. art. II, § 30. A "magistrate" is defined by statute as:

> ... an *officer* having power to issue a warrant for the arrest of a person charged with a public offense and includes the chief justice and judges of the supreme court, judges of the superior court, justices of the peace and police magistrates in cities and towns. (Emphasis added.)

A.R.S. § 1–215(13).

It is well recognized that a superior court judge may sit as a committing magistrate for the purpose of holding a preliminary examination to determine probable cause. *Sheridan v. Superior Court*, 91 Ariz. 211, 213–214, 370 P.2d 949, 951 (1962). The jurisdiction of a superior court judge to act as a magistrate for this purpose is created by statute. *Wilson v. Garrett*, 104 Ariz. 57, 58–59, 448 P.2d 857, 858–59 (1969). His powers and duties as a magistrate are solely those conferred upon him by the Rules of Criminal Procedure and applicable statutes.[3] *See State ex rel.*

---

1. The state concedes that without the wiretap evidence, it could not establish probable cause in the conspiracy charge.

2. Rule 16.1(d) provides: "except for good cause, or as otherwise provided by these rules, an issue previously determined by the court shall not be reconsidered."

 The comment to Rule 16.1(d) further explains: "issues, once determined by a court ought not, without a showing of good cause, be reconsidered by the same court or another of equal jurisdiction."

3. The functions of a magistrate are found throughout the Rules of Criminal Procedure. *See e.g.,* Rule 4.1 (requiring that person arrested shall be taken before a magistrate without unnecessary delay), Rule 4.2 (outlining procedure for initial appearance), and Rule 5.3 (describing procedures to be followed in preliminary hearing).

*Mahoney v. Stevens,* 79 Ariz. 298, 300, 288 P.2d 1077, 1078 (1955). His status and jurisdiction, sitting as a magistrate, is neither enlarged nor diminished by the extent of his jurisdiction to hear or try criminal cases. Comment to Rule 4.1(b) and (c), Ariz.R.Crim.P.

All judicial officers sitting as magistrates have equal rank. The *Sheridan* court stated that "without regard to the powers pertaining to his judicial office, a judge when exercising the functions of a magistrate has only the jurisdiction and power conferred by law on magistrates." *Sheridan,* 91 Ariz. at 214, 370 P.2d 949. The court then cited with approval the following from *People v. Swain,* 5 Cal.App. 421, 425, 90 P. 720, 722 (1907):

> ... Under the law a justice of the peace, when exercising the powers of a magistrate, has equal authority as such with the justices of the Supreme Court and judges of the superior courts when acting in a similar capacity. The jurisdiction of all those officers, when acting in the *ex officio* capacity in question, extends only to taking and hearing evidence upon the felony charge, and after hearing the proofs making an order either discharging the accused, or holding him to trial for the offense shown.... (Emphasis original.)

The *Sheridan* court also cited the following from *People v. Crespi,* 115 Cal. 50, 54, 46 P. 863, 864 (1896): " ... Justices of the supreme court, judges of the superior court, justices of the peace, and police judges, when sitting as magistrates, have the jurisdiction and powers conferred by law upon magistrates, and not those which pertain to their respective judicial offices ...". *Sheridan,* 91 Ariz. at 214, 370 P.2d 949. *See Fursdon v. Los Angeles County,* 100 Cal.App.2d Supp. 845, 848, 223 P.2d 520, 523 (1950); *see also Knight v. Maricopa County,* 53 Ariz. 540, 544, 91 P.2d 269, 271 (1939).

■ It is apparent from the foregoing that when exercising the functions of a magistrate, a superior court judge takes on a role separate and apart from his superior court duties. He is an *ex officio* magistrate with narrowly restricted power and jurisdiction.

■ In deciding that the superior court had no jurisdiction over the special action, Judge Sheldon relied on the comment to Rule 16.1(d) of the Arizona Rules of Criminal Procedure, prohibiting reconsideration of a court's determination by the same court. However, the decisions of a superior court judge sitting as a magistrate are not an exercise of the judicial power of the superior court. 22 C.J.S. *Criminal Law* § 343(a), § 345. The determinations of a magistrate, who may at another time wear the robes of a superior court judge, are the determinations of an officer created by constitution and statute. He may, in addition to being a magistrate, hold any of the positions or offices enumerated in A.R.S. § 1–215(13).[4] His duties as a magistrate, however, are separate and apart from any court.

The special concurrence relies upon *Green v. Thompson,* 17 Ariz.App. 587, 499 P.2d 715 (1972). In *Green,* this court held that a superior court judge may not review the actions of a superior court commissioner by means of a special action. The basis for that decision was the conclusion that the superior court judge and the court commissioner are *members of the same court.*

Based on provisions in our constitution, as well as former Supreme Court Rule 46, now Rule 91, we determined that court commissioners are appointed by the presiding judge of the superior court, that they act within the jurisdiction of the superior court, and that they are labeled "superior court commissioners." Although his jurisdiction is narrower, a court commissioner, acting within the confines of his authority, acts as a member of the superior court. *Green,* at 590, 499 P.2d 715.

---

4. If we were to accept the position adopted by the special concurrence herein, we might ask, rhetorically, what state court would review the actions of a Supreme Court Justice sitting as a magistrate if the other members of that court were precluded from conducting special action review.

In the note to Supreme Court Rule 91, the supreme court emphasized the role of the commissioner:

> It is the intention of the Supreme Court that court commissioners shall hereafter, as the court commissioner in Maricopa County has been doing since April 18, 1961, function within the scope of their authority in the same manner as do judges of the Superior Court, and that the effect of an order, judgment or decree entered by a court commissioner shall be precisely the same as if the same order, judgment or decree had been entered by a judge of the Superior Court.

Based on this language, this court reasoned that court commissioners and superior court judges are members of the same court.

The superior court has appellate jurisdiction, as well as power to issue writs [5] to "inferior courts, boards and officers". A.R.S. § 12–124(B). The court, in *Green,* concluded that because a court commissioner is a judicial officer of the superior court, his decisions are not those of an "inferior court, board, or officer" and are, therefore, not reviewable by the superior court.

We believe *Green* is distinguishable because, in our view, a magistrate is not an officer of the superior court, but is an inferior officer whose authority and powers are separate from any court. Simply stated, the powers and duties of a magistrate are conferred upon officers, not courts. A.R.S. § 1–215(13).

As stated in *Green,* "[t]he scope of the authority of the commissioner is a limited area within the jurisdiction of the superior court", and that "within the confines of that authority, he acts as a superior court judge." The distinguishing feature of this case is that Judge Hall was not a magistrate who was "acting as a superior court judge", but instead was a magistrate performing functions pertaining to the distinct office of a magistrate. In so doing, his sphere of activity was not "a limited area within the jurisdiction of the superior court," but rather was an exercise of the authority belonging to the office of magistrate.

In summary, the conduct of preliminary hearings is not a function within the jurisdiction of the superior court, but is a function within the jurisdiction of magistrates. We do not deem it significant that Judge Hall received this case by assignment from his presiding judge in the superior court. By operation of law, Judge Hall had been appointed a magistrate contemporaneously with his appointment to the superior court. The "assignment" merely designated which of the Maricopa County superior court judges would exercise his (not the superior court's) authority as a magistrate in this case. Nor do we believe the determination of this issue hinges on whether Judge Hall elected to utilize his superior court facilities while sitting as a magistrate, or whether he chose to remove himself to the local justice court. A magistrate is an officer with certain specified powers, not an appendage of any particular court.

We therefore conclude that, pursuant to A.R.S. § 12–124, the superior court has jurisdiction to accept a special action challenge of a decision by a superior court judge sitting as a magistrate.

### Revocation of Release

Next we determine whether the magistrate may properly consider the revocation of petitioner's release. Art. II, § 22 of the Arizona Constitution provides:

> All persons charged with crime shall be bailable by sufficient sureties, except for:
>
> 1. Capital offenses, when the proof is evident or the presumption great that the accused is guilty of the offense.
>
> . . .
>
> 3. Felony offenses if the person charged poses a substantial danger to any other person or the community, if no conditions of release which may be imposed will reasonably assure the safety of the other person or the community

---

**5.** The relief previously obtained by extraordinary writs of certiorari, mandamus, and prohibition is now referred to as "special action relief". Rule 1, Rules of Procedure for Special Action.

and if the proof is evident or the presumption great as to the present charge.

Petitioner was released on his own recognizance at his initial appearance without objection by the state. Although he was at the time charged with a capital offense, apparently the State did not believe it could establish that "the proof is evident or the presumption great" that petitioner committed the offense without the testimony of John Harvey Adamson, who has been convicted of the same homicide as petitioner now stands charged. The State argues that at the time of the initial appearance, the State and Adamson were trying to reach an agreement to secure Adamson's testimony, which it claims would implicate petitioner. However, the agreement was not finalized and accepted by the court until a later date. Once the agreement was signed and accepted, the State filed the motion to revoke petitioner's release.

Petitioner urges that Rule 7.4(b) of the Arizona Rules of Criminal Procedures describes the procedure for reviewing the conditions of release:

b) *Subsequent Review of Conditions.* Any person remaining in custody may move for reexamination of the conditions of his release whenever his case is transferred to a different court or his motion alleges the existence of material facts not previously presented to the court.

Petitioner argues that this statute applies only if an accused is in custody and only if the accused initiates the review proceedings. Petitioner also complains that the State's Motion to Consolidate Bail Hearing and Preliminary Hearing fails to contain a verified recital of a breach of release conditions, as required by Rule 7.5(a).[6] The state's motion, however, does not focus upon petitioner's conduct subsequent to his initial appearance and release, but rather seeks an opportunity to present evidence of facts that would warrant the death penalty and to demonstrate that the proof is evident and that the presumption

of guilt is great. In essence, the state seeks to demonstrate that, with Adamson's testimony, the remaining requirements of art. II, § 22 of the state constitution, which were not addressed at the initial appearance, can now be satisfied.

Division Two of this court, in construing A.R.S. § 13–3961 as it relates to denial of bail to those found by the court to be a danger to others, stated that "[t]he court may review and amend release conditions *at any time*, and the subsequent discovery of additional information indicating that the accused is not bailable is a sufficient reason to do so." *Davis v. Winkler*, 164 Ariz. 342, 346, 793 P.2d 99, 103 (1990). [Emphasis supplied.] The court also explicitly held that the state, as well as the accused, may seek reexamination of the conditions of release. *Id.*

We, likewise, do not believe that Rule 7.4(b), in outlining an accused's right to a review of release conditions, should be construed as precluding the court from reviewing the question of the accused's bailability upon motion of the state alleging the existence of newly available evidence. We hold that a court has the power to consider a request for modification of bail status if additional information becomes available after the prior determination. *See* Vol. II ABA Standards for Criminal Justice at 10–55 (2d ed.) (1980).

The issue then becomes whether there is some new evidence available to the State that would allow review of the conditions of petitioner's release. The state relies upon the Adamson Cooperation Agreement, accepted by the court in Adamson's case on February 4, 1991, as new evidence that will establish that the proof is evident and the presumption great.

Petitioner claims that Adamson's testimony is not new evidence because it was available at the time of the initial appearance on January 3, 1991. He also claims that the State waived its right to establish

---

**6.** Rule 7.5(a). Upon verified petition by the prosecutor stating facts or circumstances constituting a breach of the conditions of release, the court having jurisdiction over the person re-

leased may issue, ... in the case of a person charged with a felony, a warrant or summons under Rule 3.2, to secure the person's presence in court....

art. II, § 22 requirements by not doing so at the initial bail determination.

We are persuaded by the State's argument that it could not rely on Adamson to provide the needed testimony until the agreement was formally accepted by the court. Therefore, his testimony may be considered "newly available evidence" that provides the basis for reconsideration of petitioner's bail status.

We conclude, therefore, that the magistrate may properly consider revocation of petitioner's release at a bail hearing.

### Wiretap Analysis

Petitioner asserts that because of the denial of his motion to preclude use of wiretap evidence at his scheduled preliminary hearing, he will be denied a right protected by federal law unless we order the committing magistrate not to consider such evidence in the proceedings. To support this argument, petitioner raises issues of jurisdiction, criminal procedure and the supremacy of federal law.

When it enacted the Omnibus Crime Control and Safe Streets Act of 1968, Congress included a scheme regulating wiretapping and electronic surveillance. Pub.L. No. 90–351, Title III, 82 Stat. 197, 211–225 (1968). Designed to meet the constitutional standards for electronic eavesdropping enunciated in *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) and *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), Title III was intended to protect the privacy of wire and oral communications and to regulate their interception. Sen.Rep. No. 1097, 90th Cong., 2d Sess. 66, *reprinted in* 1968 U.S.Code Cong. & Admin.News 2112, 2153 (legislative history). *See* Title III, § 801(b) at 82 Stat. 211 (findings). To compel compliance with this scheme, Congress inserted the following "evidentiary sanction", Sen. Rep. No. 1097, *supra* at 2184, now codified at 18 U.S.C. § 2515 (1970):

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing,

or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

This sanction applies across the board in both federal and state proceedings to suppress evidence directly or indirectly obtained in violation of the regulatory scheme. Sen.Rep. No. 1097, *supra* at 2185. *See* Title III, § 801(b) at 82 Stat. 211. To provide a remedy for the right created by this prohibition, *supra* at 2195, Congress also included in Title III the following provision now codified at 18 U.S.C. § 2518(10)(a)(1970):

> Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—
>
> (i) the communication was unlawfully intercepted;
>
> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
>
> (iii) the interception was not made in conformity with the order of authorization or approval.

Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter. . . .

The scope of this remedy is intended to be comprehensive, Sen.Rep. No. 1097, *supra* at 2195, and Arizona appellate courts have recognized the "federal exclusionary rule" created by these code provisions to be self-executing in state proceedings. *State v. Politte*, 136 Ariz. 117, 126, 664 P.2d 661,

670 (App.1982); *State v. Olea*, 139 Ariz. 280, 292, 678 P.2d 465, 477 (App.1983).

The exercise of the congressional right and remedy is further defined by state statutes, caselaw and court rules. Two years after the federal enactment of §§ 2515 and 2518, our supreme court held that a justice of the peace presiding as a magistrate at a felony preliminary hearing was without jurisdiction to order the suppression of evidence claimed to result from an unlawful search and seizure. *State v. Jacobson*, 106 Ariz. 129, 130, 471 P.2d 1021, 1022 (1970). *See also Zarate v. Jennings*, 17 Ariz.App. 401, 406, 498 P.2d 475, 480 (App.1972). Such power was vested exclusively in the superior court. *Jacobson*, 106 Ariz. at 130, 471 P.2d at 1022. While unable to order its suppression, a presiding magistrate nevertheless could rule on the admissibility of evidence in a preliminary hearing when the objection alleged the evidence was the product of an unlawful search and seizure. *Id. See also Zarate*, 17 Ariz.App. at 406, 498 P.2d at 480; *State v. Elling*, 19 Ariz.App. 317, 506 P.2d 1102 (1973) (unlawful search and seizure).

Thus *Jacobson* distinguished between the trial court's power to order unlawful evidence suppressed in a prosecution, and a magistrate's power to rule against admissibility of unlawful evidence at a preliminary hearing. *See generally* 2 W. LaFave & J. Israel, *Criminal Procedure* § 14.4 at 266

(1984). While no issue of electronic eavesdropping was involved in *Jacobson, Zarate* or *Elling*, we note that the admissibility determination allowed at a preliminary hearing by these cases might arguably comport with the 18 U.S.C. § 2515 evidentiary prohibition. However, the want of jurisdiction under *Jacobson* for a magistrate presiding at a felony preliminary hearing to order evidence suppressed impeded application of the corresponding 18 U.S.C. § 2518(10)(a) remedy guaranteeing that "[a]ny aggrieved person ... may move to suppress" unlawful wiretap or electronic surveillance evidence "in any ... hearing ... in or before any ... officer ... of ... a State, or a political subdivision thereof", and that "[s]uch motion shall be made before the trial, hearing or proceeding ...".

By adoption of the Arizona Rules of Criminal Procedure on 17 April 1973, effective 1 September 1973, our supreme court procedurally eliminated even the admissibility challenge to preliminary hearing evidence it had recognized in *Jacobson* three years before. Rule 5.3(b) provided that "[r]ules or objections calling for the exclusion of evidence on the ground that it was obtained unlawfully shall be inapplicable in preliminary hearings." This negated the opportunity left intact by *Jacobson* to challenge the admissibility of evidence at the preliminary hearing level. *See* "Comment" to Rule 5.3.[7] This preclusion presents an

---

7. This "Comment" added that Rule 5.3(b) adopted the federal standard for evidentiary exclusion at preliminary hearings. Ten years before Congress enacted 18 U.S.C. §§ 2515 and 2518(10)(a), the U.S. Supreme Court declared that a U.S. Commissioner had no authority on preliminary examination to suppress unlawful evidence in a prosecution. *Giordenello v. United States*, 357 U.S. 480, 484, 78 S.Ct. 1245, 1249, 2 L.Ed.2d 1503 (1958). *See also United States v. Motte*, 251 F.Supp. 601, 603–604 (1966). By enacting The Omnibus Crime Control and Safe Streets Act of 1968, Congress presumably remedied this deficiency for Title III purposes. However, by order dated April 24, 1972, Rule 5.1 of the Federal Rules of Criminal Procedure was amended by the Supreme Court to provide under subsection (a) that "[o]bjections to evidence on the ground that it was acquired by unlawful means are not properly made at the preliminary examination. Motions to suppress must be made to the trial court as provided in

Rule 12." 56 F.R.D. 143, 150. *See generally* "Advisory Committee Note", *id.* at 151–154.

Under a Rules Enabling Act then in effect, Congress delegated to the Supreme Court "the power to prescribe ... rules of pleading, practice and procedure ... in criminal cases ... and in proceedings before United States magistrates. Such rules shall not take effect until ... reported to Congress ... and ... the expiration of ninety days after they have been thus reported. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." 18 U.S.C. § 3771 (1985), repealed effective December 1, 1988, 102 Stat. 4651, and replaced by 28 U.S.C. §§ 2072, 2074 (Supplement 1991). The reporting requirement impliedly reserved to Congress the power to approve, reject or alter proposed rules. *United States v. Isaacs*, 351 F.Supp. 1323, 1328 (N.D.Ill.1972). *See* 1 Wright, *Federal Practice and Procedure: Criminal 2d* § 4 at 13 (2d ed. 1982). By virtue of the "laws in conflict" supersession clause,

irreconcilable conflict with the prohibitions set forth in 18 U.S.C. § 2515.

 The supremacy clause of the federal constitution, art. VI, para. 2, compels that Arizona Rule 5.3(b) yield to the § 2515 wiretap evidence prohibition insofar as they conflict. This conflict arises as we now determine that the § 2518(10)(a) suppression device expressly prescribed by Congress to hear and determine an evidentiary challenge is, under *Jacobson* and Rule 5.3(b), Ariz.R.Crim.P., unavailable to petitioner in a preliminary examination for lack of jurisdiction in the magistrate to entertain such a motion. Congress prescribed both the right and an exclusive remedy, and absent power in the magistrates to provide such a remedy, the right cannot, under our state constitution, be exercised in the manner required by federal law. Insofar as petitioner is precluded from the benefits of his federal right to evidentiary exclusion in the state preliminary hearing forum, we are obligated to protect this right and to grant relief by barring the committing magistrate in such a proceeding from considering any evidence derived from wiretap or electronic surveillance.

## CONCLUSION

For the foregoing reasons, we determine that the superior court has jurisdiction to review by special action the proceedings of a superior court judge sitting as a magistrate; that a magistrate may review the bailability of an accused upon request of the state alleging the existence of newly available evidence; and that a magistrate lacks the power to suppress illegally obtained wiretap evidence, thus precluding the use of wiretap evidence in preliminary hearings.

GERBER, J., concurs.

VOSS, Judge, specially concurring.

I agree with the majority's conclusion that we should take special action jurisdiction. However, because I disagree with the majority's resolution of whether the superior court has jurisdiction to review the actions of a superior court judge sitting as a magistrate in the superior court, I specially concur. With all other aspects of the majority's opinion I agree.

I disagree with the majority because both the superior court judge sitting as a magistrate and the superior court judge asked to review the magistrate's ruling *in this case*, Judge Sheldon, are judicial officers of the same court, the Superior Court of the State of Arizona in and for the County of Maricopa. Since special actions necessarily are from an inferior court to a higher court, Comment to Rule 1, Rules of Procedure for Special Actions, and here the magistrate was sitting in a court of equal jurisdiction to that where the special action was taken, Judge Sheldon correctly concluded that he lacked jurisdiction to consider the special action.

The majority believes that when a superior court judge, or other authorized person, sits as a magistrate, the magistrate is sitting without a court and that the magistrate is simply an officer with certain powers and jurisdiction which are specific to the office of magistrate.

The Arizona Constitution, Art. VI, § 1 provides that the judicial power shall be vested in, "an integrated judicial department consisting of a Supreme Court, such intermediate appellate courts as may be provided by law, a superior court, such courts inferior to the superior court as may be provided by law, and justice courts." Article VI, § 32 of the Arizona Constitution provides, "the jurisdiction, powers and duties of courts inferior to the superior court and of justice courts ... shall be as

congressional failure to act on the Rule 5.1(a) amendment before it became effective on October 1, 1972, operated to carve an exception from 18 U.S.C. §§ 2515 and 2518(10)(a) for federal preliminary hearings. *See* Wright, *supra,* § 32 at 27 (rules supersede inconsistent statutes in effect when adopted); Siegel, "Commentary on 1988 Revision" at 28 U.S.C. § 2071 (Supplement

1991). This exception remains in effect. *See* Federal Rules of Criminal Procedure Rule 5.1(a) (Supplement 1991).

Although Arizona Rule 5.3(b) borrowed the federal Rule 5.1(a) standard for evidence admissibility, state preliminary hearings could not thereby come within the limited federal rule exception to 18 U.S.C. §§ 2515 and 2518(10)(a).

provided by law." Thus, all Arizona courts are created by the constitution or by the legislature. I fail to find where the constitution or the legislature has provided for a magistrate's court that is inferior to the superior court such as to enable parties to exercise their appeal and special action rights. Although I agree that a magistrate is a judicial officer with specific powers and jurisdiction, I also believe that the magistrate is a member of the court where he or she is sitting. This must necessarily be so in order for parties to have the right to appeal and to bring special actions, as those rights are exercised from an inferior court to a higher court.

The issue I address today is not an issue of first impression in Arizona. In *Green v. Thompson*, 17 Ariz.App. 587, 499 P.2d 715 (1972) this court answered the question whether a superior court judge has jurisdiction to entertain a special action against a superior court commissioner in the negative. We stated that traditionally, prohibition, or as writs of certiorari, mandamus and prohibition are now labeled, special action, lies to prevent an inferior court or tribunal from action without or in excess of its jurisdiction. *Id.* at 588, 499 P.2d at 716. We stated that the question was not whether the superior court commissioner had more limited jurisdiction than the superior court judge, but rather whether the commissioner sits in a court or tribunal that is inferior to the superior court. We concluded that the commissioner sat in the same court as the superior court judge because within the jurisdiction of the superior court, there is a limited area in which the commissioner has authority to act and because, within the scope of the commissioner's authority, his or her acts have the same force and effect as if done by a superior court judge. We stated that if facts justifying and requiring special action relief from the acts of a commissioner occur, that relief could be obtained from this court. *Id.* at 591, 499 P.2d at 719.

In support of our decision in *Green*, we cited *People ex rel. Filkin v. Flessner*, 48 Ill.2d 54, 268 N.E.2d 376 (1971) where the Illinois Supreme Court was faced with the question of whether a circuit court judge could issue a writ of mandamus or prohibition against a magistrate. We stated that in Illinois the relationship between a circuit court judge and a magistrate parallels the relationship between the superior court judge and the commissioner in Arizona because magistrates are appointed by and serve at the pleasure of circuit court judges and the scope of their authority is defined by law and is a limited area within the jurisdiction of the circuit court. In *Filkin*, the Illinois Supreme Court held that a circuit court judge could not issue a writ of prohibition against the magistrate because mandamus and prohibition are writs directed to inferior courts. The court stated that the circuit judge and the magistrate were members of the same court. *Id.* at 56, 268 N.E.2d at 378.

Both *Filkin* and *Green* do not regard as pertinent the fact that the magistrate or commissioner is appointed by a judge and that their authority is narrower than that of a judge.

I think the reasoning in *Green* and *Filkin* applies equally to magistrates in Arizona. The magistrate in the present case was sitting in the superior court. The order complained of is captioned from superior court. Superior court magistrates are appointed by and sit at the pleasure of superior court judges.[8] In this case Superior Court Judge Reinstein, the presiding criminal judge, appointed Judge Hall a fellow superior court judge to act as magistrate. The scope of the magistrate's authority is defined by law. The magistrate's acts have the same force and effect as if done by a judge, albeit within their limited jurisdictional area.

The majority argues that *Green* is inapplicable because a magistrate is not a member of any court and a commissioner is a

---

8. This is not to say that the superior court could not take special action jurisdiction of the actions of a magistrate sitting in city court or any other court which is inferior to it. *See e.g.,*

*Price v. Maxwell,* 140 Ariz. 314, 681 P.2d 466 (App.1984), *vacated on other grounds,* 140 Ariz. 232, 681 P.2d 384 (1984).

member of the superior court. That, in my view, is a distinction without a difference. The magistrate sits in the court where he or she has been appointed to sit. Like the commissioner, the magistrate's jurisdiction is narrower than a judge's and when the magistrate sits in the superior court, the orders he or she issues are captioned from the superior court.

Following the majority's argument to its logical conclusion, I wonder where a party would appeal to or request special action relief from when the decision the party complaining of was a decision of a magistrate sitting in city court. Obvious to me is that the action would lie in superior court because one appeals to or brings special action from an inferior court to a higher court. It would seem that the majority would find no jurisdictional problem with an appeal or special action in the first instance to this court because a magistrate is just an officer sitting without benefit of a court.

The majority, citing 22 C.J.S. *Criminal Law* § 343(a), § 345, argues that the decisions of a superior court judge sitting as magistrate are not an exercise of the judicial power of the superior court. Section 343(a) states:

> Jurisdiction to examine and commit persons accused of crime is controlled by constitutional or statutory provisions, and is generally vested in justices of the peace or police magistrates, or in judges or officials authorized to exercise such jurisdiction.

The comment to the section states, "the power to examine and to commit persons charged with crime is not judicial, but is one of the duties of the conservators of the peace, and it may be, and usually is, vested in persons other than courts, as, for instance, justices of the peace, or police magistrates." Stated simply, the section provides that the role of the magistrate, in some constitutional or statutory schemes, is not carried out by courts of record. However, the section clearly states that the role is guided by the particular state's statutes and constitution. I believe in Arizona the magistrate is an officer of the court

where he or she sits, which may be a court of record.

The majority correctly concludes that when a superior court judge takes on a role separate and apart from his superior court duties, i.e. acts as a magistrate, the judge is acting *ex officio*. A magistrate certainly is acting without benefit of his or her previous office. However, the magistrate is still a judicial officer of the *court* where he or she sits, even though the magistrate is dispossessed of the powers of his or her previous office.

Lastly, I disagree with the majority's reliance on A.R.S. § 12–124(B) for the position that the superior court has jurisdiction in this special action proceeding. Section 12–124(B) provides, "the superior court shall have appellate jurisdiction in all actions appealed from justices of the peace, inferior courts, boards and officers from which appeals may, by law, be taken." The majority argues that section 12–124(B) gives the superior court special action jurisdiction over the office of the magistrate. It may, when the magistrate is sitting in an inferior court, however, here, the magistrate is sitting in the superior court. To maintain any consistency, this must be the result. The term "officer" as used in that section clearly refers to officers of boards and not to the office of magistrate.