2007 OK CR 44

**STATE of Oklahoma, Appellant**

v.

**Alfredo SERRATO, Appellee.**

No. S–2007–280.

Court of Criminal Appeals of Oklahoma.

Dec. 18, 2007.

Michael S. Johnson, Oklahoma City, OK, attorney for appellee on appeal.

Travis White, Assistant General Counsel, Oklahoma City, OK, attorney for appellant on appeal.

## *OPINION*

LEWIS, Judge.

¶ 1 The case before us presents the novel question of whether judicially authorized law enforcement interceptions of Appellee's cellular ("wireless") communications violated the Security of Communications Act, 13 O.S.2001, §§ 176.1–176.14.

## *FACTS*

¶ 2 By an application to the District Court of Oklahoma County, agents of the Oklahoma Bureau of Narcotics and Dangerous Drugs Control obtained authorization to deploy pen registers and trap and trace monitoring on specific cellular phone numbers of targets in a drug investigation. Agents then obtained multiple wiretap authorizations from the Presiding Judge of this Court to intercept and eavesdrop on calls between Appellee and other participants in a marijuana trafficking conspiracy. This surveillance yielded information about the location of marijuana. After obtaining a search warrant, law enforcement officers searched Appellee's residence and seized eighty-five (85) pounds of marijuana, firearms, and currency.

¶ 3 The State charged Appellee in the District Court of Oklahoma County with trafficking in illegal drugs and unlawful use of a communication device.[1] Appellee move to suppress the evidence. The District Court, Hon. Twyla Mason Gray, conducted an evidentiary hearing on the motion to suppress. Following testimony and argument, the District Court concluded that Appellee's cellular telephone communications were illegally intercepted and ordered the marijuana and all communications suppressed from evidence. The State brings this pre-trial appeal under the "interests of justice" provision at 22 O.S.Supp.2002, § 1053(5), *State v. Sayerwinnie,* 2007 OK CR 11, ¶ 7, 157 P.3d 137, but we note that a State appeal from the District Court's order suppressing evidence is authorized by the Security of Communications Act itself. 13 O.S.2001, § 176.14.

## *ANALYSIS*

¶ 4 Congress has prohibited unauthorized private and governmental interception of oral and wire communications since the Communications Act of 1934, 47 U.S.C.A.

---

1. *State v. Alfredo Serrato,* CF–2004–5946.

§ 605. With the passage of the federal wire-tapping statute, codified as Title III of the Omnibus Crime Control and Safe Streets Act of 1968, (hereafter "Title III," 18 U.S.C.A. § 2510–2520), Congress continued this policy by establishing minimum protections for the privacy of such communications and authorizing interception in aid of the investigation of certain offenses upon judicial warrant.[2] Title III created minimum federal standards for *all* private and governmental interceptions of protected communications within the United States. *Mitchell v. Forsyth,* 472 U.S. 511, 515, 105 S.Ct. 2806, 2809, 86 L.Ed.2d 411, 418 (1985)(finding Title III "sets forth comprehensive standards governing the use of ... electronic surveillance by both governmental and private agents"). Congress authorized the States "to adopt coordinate statutes permitting the interception of wire, oral, or electronic communications, and to grant greater, but not lesser, protection than that available under federal law." *See State v. Mullens,* 221 W.Va. 70, 650 S.E.2d 169 (2007) (*quoting Commonwealth v. Spangler,* 570 Pa. 226, 809 A.2d 234 (2002)); *Question Submitted by: The Honorable John Nance,* 2000 OK AG 45, ¶ 7.

¶ 5 The Security of Communications Act (hereafter SCA, or "the Act"), enacted by the Legislature in 1982, is one such coordinate statute. The SCA prohibits unauthorized interceptions or endeavors to intercept "any wire, oral, or electronic communications;" unauthorized use and disclosure of such communications; and the unlawful use, manufacture, or possession of equipment or devices used or intended primarily for use in violation of the Act. Violation is a felony punishable by up to five (5) years imprisonment and a minimum fine of five thousand dollars ($5,000.00). 13 O.S.Supp.2003, § 176.3.

¶ 6 The Legislature has provided procedures for obtaining judicial authorization to intercept communications otherwise protected by the Act. Like its federal counterpart, the SCA permits law enforcement agencies to apply to a court of competent jurisdiction for authorization to intercept protected communications in connection with investigation of certain offenses. 13 O.S., §§ 176.7–176.13 (authorizing orders for interception in murder, terrorism, and narcotics investigations); §§ 177.1–177.5 (authorizing orders for pen register or trap and trace).

¶ 7 The SCA definition of "wire communication" in effect in 2004, when these interceptions were authorized, was identical in material respects to the 1968 definition used by Congress in Title III.[3] Technological advances in communication, including the widespread use of cellular phone technology, created uncertainties in Congress about the scope of the statutory language in Title III. In the Electronic Communications Privacy Act of 1986 (hereafter "ECPA of 1986" or "ECPA"), Congress revised the definition of "wire communication," and made other substantial amendments to Title III, in an effort to clarify its application to emerging communications technologies. The 1986 amendments to Title III included the following definition of "wire communication:"

"Wire communication" means any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable or other like connection between the point of origin and the point of reception (*including the use of such connection in a switching station* ) furnished or operated by any person engaged in providing or operating such facilities for the transmission of interstate or foreign communications or com-

---

**2.** Congress passed Title III in response to the Supreme Court's decisions in *Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) and *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), which together established Fourth Amendment standards for protection from unreasonable governmental interception of private communications.

**3.** 13 O.S.2001, § 176.2(13) defined "wire communication" as "any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a communication common carrier in providing or operating such facilities for the transmission of intrastate, interstate or foreign communications."

munications affecting interstate or foreign commerce ... (Emphasis added).

18 U.S.C.A., § 2510(1).

¶ 8 Congress also provided in the Electronic Communications Privacy Act:

Any interception pursuant to section 2516(2) of title 18 of the United States Code which would be valid and lawful without regard to the amendments made by this title shall be valid and lawful notwithstanding such amendments if such interception occurs during the period beginning on the date such amendments take effect and ending on the earlier of-(1)the day before the date of the taking effect of State law conforming the applicable State statute with chapter 119 of title 18, United States Code 18 USC 2510 et seq., as so amended; or (2) the date two years after the date of the enactment of this Act.

Pub.L. No. 99–508, § 111, 100 Stat. 1848.

¶ 9 With this language, Congress gave the States no more than two years from the effective date of the ECPA–January 20, 1987–during which they might lawfully continue to authorize and conduct interceptions under the former version of Title III. But Congress required States within that time to enact a "State law conforming the applicable State statute with chapter 119 of title 18, United States Code 18 USC 2510 et seq., as so amended ..."

¶ 10 The difficulty for the State of Oklahoma in this case arose from the fact that the Legislature did not pass a "State law conforming" to the amendments of the ECPA until the 2007 legislative session. Laws 2007, SB 593, c. 339, § 1 (effective July 1, 2007). The District Court concluded that this legislative omission essentially created a gap in state law which, at the end of the Congressional two-year grace period in 1989, failed to authorize interceptions of cellular communications. After examining the legislative history of the ECPA of 1986, the District Court determined that cellular communications were not "wire communications" under the original Title III/SCA definition, and ordered these intercepted communications and their fruits suppressed from evidence. 13 O.S. 2001, § 176.13 (providing suppression remedy for unlawful interceptions).

¶ 11 The evidence presented in the District Court established that "wireless" cellular phone communications are actually processed by the initiation of a wireless communication from a handset (cell phone) to a cellular tower, from which the communication is then transmitted by wire through a switching station to another transmitting tower, then (in the case of a cell phone recipient) relayed wirelessly to a handset corresponding to the cell phone number dialed. Appellee presented no evidence to contradict this basic explanation of the current technological means involved in processing the types of cellular telephone calls intercepted here.

¶ 12 The parties appear to agree that the changes wrought by the ECPA of 1986 removed any question that Congress intended to include cellular communications among those defined as "wire communications" in Title III. *United States v. Carrazana,* 921 F.2d 1557, 1562 (11th Cir.1991) (ECPA amended Title III to protect cellular communications from interception without prior judicial approval). While we find the legislative "history" presented to the District Court and relied upon in its interpretation of the original statutory language is flawed in significant respects, legislative history is really not germane to our decision.[4] Federal legis-

---

4. We find significant gaps in the account of the ECPA's amendments and their effect on Title III. The District Court places some weight on the Supreme Court's statement in *Bartnicki v. Vopper,* 532 U.S. 514, 121 S.Ct. 1753, 149 L.Ed.2d 787 (2001), that it was as a result of Congress' inclusion of a new definition for "electronic" communications in the ECPA, along with a 1994 amendment extending protection to cordless telephone conversations, that "Title III now applies to the interception of conversations over both cellular and cordless phones." 532 U.S. at 524, 121 S.Ct. at 1759.

This statement in Justice Stevens' opinion for the Supreme Court is surprisingly contradicted in the Senate record on the passage of the ECPA, indicating that the language regarding the use of wire in switching stations *"makes it clear* that cellular communications—whether they are between two cellular telephones or between a cellular telephone and a 'land line telephone'—are included in the definition of *'wire communications'* and are covered by the statute." *See* Fishman and McKenna, Wiretapping and Eavesdropping, § 2:13 (2nd ed.1995)(quoting Senate

lative history notwithstanding, we would hold on the facts proved in the District Court that cellular communication is "wire communication" within the plain and ordinary meaning of the *original* language of section 176.2(13) of the SCA. "Despite the apparent wireless nature of cellular phones, communications using cellular phones are considered wire communications under the statute, because cellular telephones use wire and cable connections when connecting calls." *In The Matter Of The Application Of The United States For An Order Authorizing The Roving Interception Of Oral Communications,* 349 F.3d 1132, 1138 n. 12 (9th Cir.2003).

¶ 13 This alone would warrant reversal of the District Court's order.[5] However, given the important interrelationship of federal and state statutes in the area of communications privacy and wiretapping, a "plain and ordinary meaning" approach to the state statutory language ignores some important aspects of federalism that finally dictate the result in this appeal. Resolution of the issue before us ultimately is governed not by legislative history or statutory interpretation, but by the principle of supremacy of federal law embodied in Article VI, Clause 2 of the United States Constitution:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the authority of the United States, shall be the supreme Law of the Land; *and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.* (Emphasis added).

■ ¶ 14 The supremacy of Title III in the regulation of communications privacy means that no State has the power to simply "opt-out" of the *minimum* requirements of federal law and pursue a non-conforming regulatory path in its own wiretapping statutes. Under the current regime established by Congress in Title III, a state wiretapping law can never be less restrictive than federal law. *Carrazana,* 921 F.2d at 1562 (Title III generally pre-empts less restrictive state wiretapping laws); *Question Submitted by: The Honorable John Nance,* 2000 OK AG 45, ¶ 7.

■ ¶ 15 When Congress amends controlling provisions of the federal wiretapping law, a non-conforming state law is rendered ineffective by force of the Supremacy Clause. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992), *quoting Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981) (under the Supremacy Clause, "state law that conflicts with federal law is 'without effect' "); *United States v. Hall,* 543 F.2d 1229, 1232 (9th Cir.1976) (federal wiretapping law controls conflicting state law under Supremacy Clause); *Bishop v. State,* 241 Ga.App. 517, 526 S.E.2d 917, 920 (1999) (States are free to adopt more restrictive legislation, or no legislation at all, but not less restrictive legislation than Title III). Given the inclusion of the two-year conforming period in the ECPA of 1986, we find it clear that Congress intended to pre-empt non-conforming state wiretapping laws at the end of that period. S.Rep. No. 99–541, at 49, 1986 U.S.C.C.A.N., at 3603; *Schmerling v.*

Rep. No. 99–541, at 11, reprinted in 1986 U.S.C.C.A.N. 3555, 3565)(internal quotations omitted)(Emphasis added). We also find contrary indications in the original legislative history of Title III itself, especially the statement of legislative intent with respect to the 1968 definition of "wire communications," which said:
> Paragraph (1) defines a "wire communication" to include all communications carried by a common carrier, in whole or in part, through our Nation's communications network. The coverage is *intended to be comprehensive.*

S.Rep.No. 90–1097, 1968 U.S.C.C.A.N. 2111, 2178. (Emphasis added).

Congress' intent in 1968 to provide "comprehensive" protections for "all communications carried by a common carrier, in whole or in part,

through our Nation's communications network" leaves no room for doubt that the plain and ordinary meaning and the clear legislative intent of Title III's *original* definition of "wire communication"—and the same 1982 state law definition in section 176.2(13) of the SCA—embrace "wireless" cellular communication as such technology exists today.

5.  "Where the language of a statute is plain and unambiguous and the meaning clear and unmistakable, there is no room for construction, and no justification exists for interpretative devices to fabricate a different meaning." *McBrain v. State,* 1988 OK CR 261, ¶ 11, 764 P.2d 905, 908.

*Injured Workers' Insurance Fund,* 139 Md. App. 470, 776 A.2d 80, 96 n. 15 (Ct. Spec.App.2001), reversed on other grounds, *Schmerling v. Injured Workers' Insurance Fund,* 368 Md. 434, 795 A.2d 715 (2002) (ECPA conforming period indicated Congressional intent to pre-empt contrary state laws); *Cipollone,* 505 U.S. at 516, 112 S.Ct. at 2617, *quoting Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978) (in determining whether Congress intended federal law to preempt a state law, "the purpose of Congress is the ultimate touchstone" of analysis).

¶ 16 The Legislature's omission to enact a conforming (or more restrictive) state statute within the two-year grace period resulted in pre-emption of the original Title III/SCA definition of "wire communication" with the ECPA definition, by operation of the Supremacy Clause. The latter definition clearly authorized the interception of cellular communications after its effective date of January 20, 1987. The Legislature's omission to conform our definition of "wire communication" did not render state interceptions of cellular communications illegal, because controlling federal law in the ECPA unceremoniously pre-empted state law in January, 1989. *Cf. Dunlap v. Superior Court,* 169 Ariz. 82, 88–90, 817 P.2d 27, 33–35 (Ariz.Ct.App.1991) (state rules conflicting with Title III exclusionary rule were rendered ineffective by Supremacy Clause); *Frierson v. Goetz,* 227 F.Supp.2d 889, 902 (M.D.Tenn.2002) (assuming, without deciding, that less restrictive state wiretap procedures for cordless phone interception were pre-empted by 1994 amendments to Title III).

¶ 17 The SCA has authorized law enforcement officers to seek judicial orders for the interception of "wire communications" since its first enactment in 1982. The definition of "wire communications" in Title III, as amended by the ECPA of 1986, authorized the interception of cellular communications when these intercept orders were issued in 2004. In 2007, the Legislature adopted the ECPA definition of "wire communication," removing any question of the Legislature's intent to conform state law to Title III. Laws 2007, SB 593, c. 339, § 1, to be codified at 13 O.S.Supp.2007, § 176.2(14). Appellee's cellular communications were "wire communications" intercepted by judicial orders obtained in compliance with the Security of Communications Act. The District Court's order suppressing these communications and evidence derived from them is **REVERSED.**

**DECISION**

¶ 18 The Order and Judgment of the District Court of Oklahoma County suppressing evidence is **REVERSED.** Pursuant to Rule 3.15, Rules of the Court of Criminal Appeals, Title 22, Ch. 18, App. (2005), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

C. JOHNSON, V.P.J., CHAPEL, A. JOHNSON, JJ., concur.

LUMPKIN, P.J., concurs in results.

LUMPKIN, Presiding Judge: concur in results.

¶ 1 I concur in the result reached by the Court in this case. However, I would resolve the issue as the Court originally does by simply stating "Federal legislative history notwithstanding, we would hold on the facts proved in District Court that cellular communication is 'wire communication' within the plain and ordinary meaning of the *original* language of Section 176.2(13) of the SCA." The additional discussion of the Supremacy Clause of the Federal Constitution is unnecessary when the issue can be resolved on the plain reading of the statute.