**131 Nev., Advance Opinion 32**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

PHILLIP DOUGLAS SHARPE,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 64287


**FILED**

JUN 04 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a guilty plea, of trafficking in a controlled substance. Third Judicial District Court, Lyon County; Leon Aberasturi, Judge.

*Affirmed.*

Quade Law, Ltd., and Paul E. Quade, Reno,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Robert Auer, District Attorney, and Jeremy R. Reichenberg and Moreen Scully, Deputy District Attorneys, Lyon County,
for Respondent.

Gordon Silver and Dominic P. Gentile, Las Vegas,
for Amicus Curiae Nevada Attorneys for Criminal Justice.

Steven B. Wolfson, District Attorney, and Steven S. Owens, Chief Deputy District Attorney, Clark County,
for Amicus Curiae Nevada District Attorneys Association.

BEFORE SAITTA, GIBBONS and PICKERING, JJ.

10/8/15: Corrected per letter to publishers. CT

15-17025

*OPINION*

By the Court, GIBBONS, J.:

In this opinion, we address whether Nevada wiretap law permits the interception of cellular telephone calls and text messages, even though it has not been updated since 1973. We conclude that Nevada wiretap law, assuming its other statutory requirements are satisfied, allows for the interception of cellular telephone calls and text messages.

*FACTS AND PROCEDURAL HISTORY*

In 2010, officers began investigating appellant Phillip Sharpe after receiving information that he distributed methamphetamines. Approximately four months into their investigation, officers obtained a warrant authorizing a wiretap to intercept communications on two different cellular telephone numbers attributed to Sharpe. The wiretap resulted in the interception of both telephone calls and text messages. After collecting sufficient intelligence, officers obtained a search and seizure warrant for Sharpe's residence and vehicles.

Four days after obtaining the search and seizure warrant, due to intelligence gathered from physical surveillance and the wiretap, officers anticipated that Sharpe intended to purchase a large quantity of methamphetamines. After observing the presumed drug deal, officers pulled Sharpe over and arrested him. During the arrest, officers confiscated approximately 3.25 pounds of methamphetamines from Sharpe's vehicle. Almost simultaneously, officers executed the search and seizure warrant at Sharpe's residence and confiscated small amounts of various drugs and drug paraphernalia.

Sharpe was charged with four drug-trafficking-related felonies. After pleading not guilty on all four counts, Sharpe filed a motion

to compel further discovery, two motions to suppress evidence obtained from the wiretap, a motion to suppress evidence obtained from the search of his vehicle, and a motion for a *Franks*[1] hearing. The district court denied all five motions.

Subsequently, Sharpe pleaded guilty to trafficking in a controlled substance, level III, based upon the 3.25 pounds of methamphetamines confiscated from his vehicle. Sharpe, however, reserved his right to appeal the denial of the aforementioned five motions. On October 18, 2013, the district court sentenced Sharpe to life imprisonment with the possibility of parole after serving 10 years, $235 in fees, and a $50,000 fine.

## DISCUSSION

Although Sharpe raises a multitude of issues on appeal, we take this opportunity to discuss a specific issue originating from his second motion to suppress the wiretap. In that motion, Sharpe argued that the fruits of the wiretap should be suppressed because Nevada law does not allow for the interception of cellular communications. The district court disagreed. After oral arguments on appeal, we ordered amicus briefs on the following narrow issue: "whether Nevada wiretap law allows for the interception of cellular telephone calls and SMS text messages. [And] [m]ore specifically, whether NRS 179.460(1)'s mention of 'wire or oral communications' includes cellular telephone calls and SMS text messages, considering that similar federal statutes were updated to include 'electronic communications,' while NRS 179.460(1) was not."

---

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

This issue presents questions of statutory interpretation, which we review de novo. *See State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011).

In response to the United States Supreme Court's decisions in *Berger v. New York*, 388 U.S. 41 (1967), and *Katz v. United States*, 389 U.S. 347 (1967), "Congress undertook to draft comprehensive legislation both authorizing the use of evidence obtained by electronic surveillance on specified conditions, and prohibiting its use otherwise." *Bartnicki v. Vopper*, 532 U.S. 514, 523 (2001) (internal quotations omitted). This legislative effort resulted in the enactment of Title III of the Omnibus Crime Control and Safe Streets Act of 1968. *Id.* at 523. Title III allowed for the interception of both wire communications and oral communications as long as certain requirements were met. *Id.* ("One of the stated purposes of [Title III] was to protect effectively the privacy of wire and oral communications." (internal quotations omitted)). Pertinent to the issue on appeal, Title III defined "'wire communication' [as] . . . 'any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or like connection between the point of origin and the point of reception.'" *Commonwealth v. Moody*, 993 N.E.2d 715, 718 (Mass. 2013) (emphasis omitted) (quoting Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, § 802, 82 Stat. 197, 212 (1968) (codified as amended at 18 U.S.C. § 2510 (2014))).

"In enacting Title III [Congress] intended to occupy [and thus preempt] the field of wiretapping and electronic surveillance, except as that statute specifically permits concurrent State regulation." *Id.* at 718 (alterations in original) (internal quotations omitted). The 1968 Senate

SUPREME COURT
OF
NEVADA

(O) 1947A

4

Report on Title III states that: "[t]he proposed provision envisions that States would be free to adopt more restrictive legislation, or no legislation at all, but not less restrictive legislation." S. Rep. No. 90-1097, at 98 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2187. Accordingly, states were allowed to adopt their own wiretap laws, as long as they were at least as restrictive as federal legislation. *See State v. Serrato*, 176 P.3d 356, 360 (Okla. Crim. App. 2007) ("Under the current regime established by Congress in Title III, a state wiretapping law can never be less restrictive than federal law.").

In 1968, Nevada law was already more restrictive than federal law. Eleven years earlier, the Nevada Legislature had enacted what is now NRS 200.650. At the time, NRS 200.650 prohibited a person from "surreptitiously listening to, monitoring or recording, or attempting to listen to, monitor or record," i.e., eavesdrop, a private conversation via a device, unless authorized to do so by one of the persons engaged in the private conversation. *See* A.B. 47, 48th Leg. (Nev. 1957).

In 1973, the Nevada Legislature introduced Senate Bill 262. *See* S.B. 262, 57th Leg. (Nev. 1973). Once passed, Senate Bill 262 provided for Nevada's wiretap statutes and introduced the two statutes at issue in this appeal, what are today NRS 179.455 and NRS 179.460. *See* 1973 Nev. Stat., ch. 791, §§ 10, 11, at 1743. At the same time, the Legislature amended NRS 200.650 to state that a person could eavesdrop if the person met the requirements of the wiretap statutes. *See id.*, § 26, at 1749.

Subject to other qualifications, Senate Bill 262 allowed "a supreme court justice or . . . a district judge in the county where the interception is to take place" to issue "an order authorizing the

interception of wire or oral communications." *Id.*, § 11, at 1743; *see also* NRS 179.460. A "wire communication," like its federal equivalent at the time, was defined as "any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable or other like connection between the point of origin and the point of reception." 1973 Nev. Stat., ch. 791, § 10, at 1743; *see also* NRS 179.455.

The relevant portions of these Nevada statutes have remained the same since 1973. But federal wiretap law kept developing. In 1986, Congress amended Title III with the Electronic Communications Privacy Act of 1986 (ECPA). *See generally* Pub. L. No. 99-508, 100 Stat. 1848 (1986) (codified as amended in scattered sections of 18 U.S.C.). As part of this act, Congress created "a new category of protected communication called 'electronic communication,'" to go along with wire and oral communications. *Moody*, 993 N.E.2d at 719. Congress also amended the definition of "wire communication." *Id.* at 720. Due to the creation of the "electronic communication" category and the amendment of the definition of "wire communication," today, cellular telephone calls and text messages are commonly viewed as electronic communications. *See Bartnicki*, 532 U.S. at 524; *McKamey v. Roach*, 55 F.3d 1236, 1240 (6th Cir. 1995).

Additionally, "the ECPA established a two-year grace period for States, essentially delaying Federal preemption with respect to the amendments and allowing States time to amend their wiretap statutes to the extent necessary to meet or exceed the level of protection provided to electronic communications under Title III." *Moody*, 993 N.E.2d at 720. Nevada did not update its wiretap statutes. On appeal, Sharpe argues that Nevada's failure to update its wiretap law to reflect federal wiretap

law means that Nevada wiretap law does not give the proper statutory authorization for officers to intercept cellular telephone calls and text messages. Amicus Nevada Attorneys for Criminal Justice asserts that Nevada's failure to update must be construed as the Legislature choosing to achieve a result different from federal wiretap law, i.e., no authorization for the interception of cellular telephone calls or text messages.

"When a statute is plain and unambiguous, this court will give that language its ordinary meaning and not go beyond it." *State v. Allen*, 119 Nev. 166, 170, 69 P.3d 232, 235 (2003). We only turn to a statute's legislative history when the statute is ambiguous. *Lucero*, 127 Nev. at 95, 249 P.3d at 1228. A statute is ambiguous "when the statutory language lends itself to two or more reasonable interpretations." *Id.* (internal quotations omitted). Further, "'[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole.'" *Yates v. United States*, 574 U.S. ___, ___, 135 S. Ct. 1074, 1081-82 (2015) (alterations in original) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

NRS 200.650 allows for the interception of a private communication if authorized by NRS 179.410 to 179.515. NRS 179.460, subject to other qualifications, permits the interception of "wire communications." A "wire communication"—still defined as it was in 1973—is "any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable or other like connection between the point of origin and the point of reception." NRS 179.455.

 

We conclude that NRS 179.455's definition of "wire communication" includes cellular telephone calls and text messages by its plain terms. The broad scope of "any communication" is obvious. We conclude that "any" indicates that both cellular telephone calls and text messages fall within the definition of "wire communication." Next, for cellular telephone calls and text messages to be included under the plain terms of the definition of "wire communication," they must be "made in whole or in part . . . by the aid of wire, cable or other like connection between the point of origin and the point of reception." NRS 179.455.

When faced with a similar question, many courts have found that cellular telephone calls and text messages are made in part "by the aid of wire . . . between the point of origin and the point of reception." NRS 179.455; *see In re Application of United States for an Order Authorizing Roving Interception of Oral Communications*, 349 F.3d 1132, 1138 n.12 (9th Cir. 2003) ("Despite the apparent wireless nature of cellular phones, communications using cellular phones are considered wire communications under the statute, because cellular telephones use wire and cable connections when connecting calls."); *Moody*, 993 N.E.2d at 722-24 (concluding that Massachusetts' wiretap law, which possesses the same 1968 definition of "wire communication" as Nevada, allows for the interception of cellular telephone calls and text messages because each communication "travels in part by wire or cable or other like connection"); *Serrato*, 176 P.3d at 359 ("The evidence presented in the District Court established that 'wireless' cellular phone communications are actually processed by the initiation of a wireless communication from a handset (cell phone) to a cellular tower, from which the communication is then transmitted *by wire* through a switching station to another transmitting

 

tower . . . ." (emphasis added)); *see also* S. Rep. No. 99-541, at 9 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3563 (noting that cellular telephone services "use[ ] both radio transmission and wire to make 'portable' telephone service available"). We agree with the conclusion of our sister courts: cellular telephone calls and text messages rely in part upon the aid of wire for the purposes of transmission.

Accordingly, we conclude that cellular telephone calls and text messages are "wire communication[s]" under NRS 179.455's plain terms, because cellular telephone calls and text messages qualify as "any communication" and are "made in whole or in part . . . by the aid of wire, cable or other like connection between the point of origin and the point of reception."

Sharpe also asserts on appeal that because Nevada did not update its wiretap law in accordance with federal wiretap law, Nevada wiretap law is less restrictive and is thus preempted. Sharpe, however, fails to point out how Nevada wiretap law is less restrictive, i.e., what Nevada wiretap law allowed to occur here that ~~which~~ federal wiretap law would have prohibited. Due to our holding, current Nevada wiretap law, like federal wiretap law, allows for the interception of cellular telephone calls and text messages. Although the statutes read differently, their allowances in this regard are equally restrictive. Thus, we conclude that Nevada wiretap law is not preempted. *See* S. Rep. No. 90-1097, at 98 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2111, 2187 (stating that Title III envisioned that states "would be free to adopt more restrictive legislation, or no legislation at all, but not less restrictive legislation").

Consequently, we conclude that the district court did not err in finding that Nevada wiretap law permitted the interception of Sharpe's

cellular telephone calls and text messages.[2]  For the reasons set forth above, we affirm Sharpe's judgment of conviction.

_____, J.
Gibbons

We concur:

_____, J.
Saitta

_____, J.
Pickering

_____

[2]Further, we conclude that the district court did not err in its handling of the other issues raised by Sharpe on appeal.